were invalid and unenforceable, and that the city virtually repudiated them. This is strenuously denied by the deputy comptroller, and the referee has adopted the statement of the latter; but we do not know by what authority the deputy comptroller could repudiate contracts, and, indeed, it is quite evident that the plaintiffs did not rest upon any actual or supposed declarations of that officer, because on the 22d of April, 1898, the attorney for the plaintiffs had a final conversation with the comptroller, and, as he claims, it was at the conclusion of that conversation, and upon what was therein said by the comptroller, that the notice of the 22d of April, 1898, above referred to, was served upon the commissioner and deputy commissioner of sewers. On the issue of fact, the case turns upon what took place at this conversation. The learned referee has found that the plaintiffs' attorney misapprehended what was said, or is mistaken in his memory of what took place. The papers that were submitted by the comptroller to the attorney at that interview certainly indicate that there must have been a misunderstanding on the part of the attorney of the position taken by the comptroller. That officer positively denies that he said anything to the effect that the contract would not be recognized by the city as a valid one, or that he put himself in any other situation than one of inquiry concerning its validity. I do not see how we can interfere with the finding of the referee upon this subject. He says in his twelfth finding:

"That the refusal of the comptroller to make the payment of $4,535.51, due under the certificate of March 24, 1898, was owing to his uncertainty in regard to the law and the facts concerning the case, and his desire before making the payment to assure himself in regard to the validity of the contract, and for that purpose to ascertain whether the old city of New York had exceeded its debt limit on the 23d of September, 1896, the date of the contract in question; that such action on the part of the comptroller was entirely reasonable and justifiable, under the exceptional circumstances, and in no way constituted or implied an abandonment or repudiation of the contract."

He also finds that in the interview had with the plaintiffs' attorney on the 22d of April, 1898, full notice and information of the position taken by the comptroller was given.

We are of the opinion, therefore, that the judgment should be affirmed, with costs. All concur.

(57 App. Div. 390.)

SIZER v. HAMPTON & B. R. & LUMBER CO.

(Supreme Court, Appellate Division, First Department. January 25, 1901.)

WITNESSES—NONRESIDENCE—SERVICE OF PROCESS—EXEMPTION—FORFEITURE.
    Where a nonresident of the state came to New York City solely for the purpose of testifying in a cause, and the evidence was closed Friday afternoon, and he remained until Monday, he was not exempt from service of process, since he forfeited his privilege by remaining longer than necessary.

Appeal from special term.

Action by Robert R. Sizer against the Hampton & Branchville Railroad & Lumber Company. From an order denying a motion to set

aside service of summons on defendant's president, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Willis B. Dowd, for appellant.
Eustace Conway, for respondent.

RUMSEY, J.   On the 26th of October, 1900, the summons in this. action was served on one Mauldin, who seems to be the president and treasurer of the defendant corporation.   He moves to set aside the service upon the ground that he is a nonresident of this state and the defendant is a foreign corporation, and that service was made upon him while he was within the state for the sole reason that he was in attendance as a witness in behalf of his company in a suit tried in the city court of the city of New York.   That suit was one in which his company was plaintiff and the plaintiff here was defendant, but Mauldin does not claim that he was in charge of the case, or that he had any connection with it except as a necessary witness.   It appears from the affidavits of the plaintiff that the trial of the case in which Mauldin was a witness was begun on Friday, the 19th of October; that all the testimony was concluded on that day, shortly before 4 o'clock; that the case was adjourned for the summing up and the charge to the jury until Monday, the 22d of October; that Mauldin was in court on the afternoon of Friday, when the court announced that the testimony was closed, and that nothing more would be al-lowed except the summing up of counsel of the parties and the charge to the jury, and an adjournment was taken to Monday for those pur-poses only.   It appeared further that Mauldin was not present on Monday until after the argument of the counsel for his corporation was closed, and that he left before the charge.   He did not return to hear the verdict, nor was he in attendance at any of the final pro-ceedings.   So it is clear from the testimony, therefore, that Mauldin was quite correct when he says that his attendance was solely for the purpose of testifying in that case, and he seems to have had no other reason for his being present.   He did not have charge of the case, and no reason appears why he should have remained after the evidence was closed.   He stands, therefore, upon the same footing as any other witness.   It is quite clear that a nonresident who comes voluntarily into this state as a witness in an action in our courts is entitled to the privilege of not having a summons served upon him while he is in attendance at the trial, and for a reasonable time there-after to enable him to go home.   As is said in the case of Clark v. Grant, 2 Wend. 257, the privilege lasts during the hearing, and a reasonable time afterwards to enable the party to return to his resi-dence.   In the case of Chaffee v. Jones (Mass.) 19 Pick. 260, it was held that one who went out of the direct route to his home for the purpose of attending the funeral of his son forfeited his privilege, and the service upon him was held good.   The whole matter is con-sidered in Re Healey, 53 Vt. 694, and the notes to that case, which are found in 38 Am. Rep. 717 et seq.; and the conclusion to be reached

from those notes is that, while this privilege undoubtedly exists during the time necessary for the performance of the duty which brought the party into the state, it does not last for any longer time than is necessary to enable him to accomplish what he came to the state for, and go back to his home with reasonable expedition.   The fact that he was the president of the corporation does not create any presumption of itself that he had any management of the suit, or that there was any reason why he should remain here after his duty as a witness had been performed, and he makes no suggestion of the kind. We cannot say, in view of these facts, that the court erred in concluding that, being here solely as a witness, there was no occasion for him to remain after the testimony was closed, and he forfeited his privilege by thus remaining.

The order must therefore be affirmed, with $10 costs and disbursements.   All concur.